IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL RAMON MUNOZ,

     Petitioner,

v.                                       Civ. 13-cv-0052 RB/RHS
                                         Cr. 09-cr-2968 RB

UNITED STATES OF AMERICA,

     Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

     THIS MATTER comes before the Court on Petitioner Daniel Ramon Munoz's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody ("Motion") filed January 17, 2013 (Doc. 1).

**FACTS AND PROCEDURAL HISTORY**

     Petitioner was indicted on October 8, 2009 for conspiracy and possession of methamphetamine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A) (Cr. 09-2968, Doc. 35).  On July 22, 2010, the Third Superseding Indictment charged Petitioner with Count I: Conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, 21 U.S.C. §846; Counts II and III: Possession with intent to distribute more than 50 grams of methamphetamine, 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A) and 18 U.S.C. § 2; and Count VIII: Attempt to escape from custody, 18 U.S.C. § 751(a) (Cr. Doc. 233).  At all times material, Petitioner was represented by counsel appointed by the Court (Cr. Docs. 75 and 93).  Petitioner appeared before the District Judge on August 30, 2010 for a change of plea hearing to plead guilty to Counts I and VIII of the Third Superseding Indictment (Cr. Doc. 301).  On February 10, 2011, United States Probation and Pretrial disclosed the Presentence Investigation

Report ("PSR").  The PSR was revised and disclosure of the revised report occurred May 9, 2011.  On January 13, 2012, the District Judge sentenced Petitioner as to Count I of the Third Superseding Indictment to a term of imprisonment of 480 months, and as to Count VIII of the Third Superseding Indictment to a term of 60 months, both sentences to run concurrently (Cr. Doc. 447).  The Amended Judgment was filed on January 18, 2012 (Cr. Doc. 403).  Petitioner filed his Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody on January 17, 2013 (Civ. Doc. 1).  On March 29, 2013 and April 8, 2013 the Government filed its Response and Supplemental Response which included an affidavit of Petitioner's defense counsel from the underlying criminal proceeding (Civ. Docs. 10 and 11).  Petitioner filed his Reply on June 27, 2013 (Doc. 19).

## LEGAL STANDARD

A district court may grant relief under § 2255 if it determines that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255.  Petitioner must demonstrate that a defect in the proceedings resulted in a complete miscarriage of justice.  Davis v. United States, 417 U.S. 333, 346 (1974).

To succeed on a claim of ineffective assistance of counsel, Petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness as measured against prevailing professional norms. . . and (2) that there is a reasonable probability that the outcome would have been different but for counsel's inadequate performance.  Sandoval v. Ulibarri, 548 F.3d 902, 909 (10th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). In order to satisfy the first Strickland prong, Petitioner must identify acts or omissions of counsel

that are alleged not to have been the result of reasonable professional judgment. Strickland, 466 U.S. at 690.  Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness.  The Court determines whether, in light of all the circumstances, the identified acts or omissions were outside the . . . range of professionally competent assistance. Id. There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  Strickland, 466 U.S. at 688.  Conclusory allegations are insufficient to support an ineffective assistance of counsel claim.  United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994).

Finding prejudice under the second Strickland prong requires that the Petitioner demonstrate that his attorney's alleged deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  In the context of asserting ineffective assistance of counsel for a plea agreement, Petitioner is required to show that counsel's deficient performance affected the outcome of the plea process and there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002) (citing  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001), cert. denied, 534 U.S. 1140, 122 S.Ct. 1092, 151 L.Ed.2d 990 (2002)).

In applying the two-part Strickland test, a court may address the performance and prejudice components in any order.  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) (citing Strickland, 466 U.S. at 697); Boltz v. Mullin, 415 F.3d 1215, 1222 (10th Cir. 2005).  The Court need not address both components if the petitioner fails to make sufficient showing of either.  Id.

## ANALYSIS

Petitioner claims that he received ineffective assistance of counsel during the underlying criminal proceeding and appears to makes four claims: (1) that his plea was involuntary and

includes a claim that counsel failed to move to withdraw his plea, (2) he was prejudiced by a delay in sentencing, (3) his counsel failed to provide him with a final Presentence Report ("PSR"), and (4) his counsel failed to appeal his sentence (Doc. 1 at 7-11).  The Government argues that the Court should deny Petitioner's Motion because (1) it is time-barred, (2) it is procedurally barred because Petitioner failed to file an appeal, and (3) it is barred by the express waiver of Petitioner's right to collateral attack pursuant to § 2255 contained in the Plea Agreement.  Notwithstanding these arguments, the Government responds to the merits of the Petitioner's four claims. The Government fails to address the Petitioner's claim that defense counsel was ineffective in failing to withdraw his plea prior to sentencing because it was not asserted as one of the claims raised in Petitioner's Motion.  The Court notes that Petitioner's first claim for unlawful inducement and involuntariness in entering a guilty plea contained in the Motion (Doc. 1) vaguely mentions that he requested his attorney move to withdraw his plea prior to sentencing.  Petitioner's Reply fully develops his argument regarding withdrawal of the plea agreement as a basis for his ineffective assistance of counsel claim.

## I.
### Petitioner's Ineffective Assistance Of Counsel Claims

Petitioner asserts that his conviction was obtained by a plea of guilty that was unlawfully induced and not made voluntarily or with an understanding of the consequences of the plea (Doc. 1 at 7).  Petitioner also claims that his attorney was ineffective for failing to file a motion to withdraw his plea (Doc. 19 at 11).  The Government contends that the transcripts of the Plea and Sentencing hearings confirm that Petitioner entered into the Plea Agreement voluntarily (Doc. 10).  The Government's Response does not address the claim regarding the failure to file a motion to withdraw the plea.

The Court will first address whether Petitioner's plea was knowing and voluntary.  In the context of a guilty plea, to establish ineffective assistance of counsel, Petitioner must demonstrate that his attorney's performance fell below an objective standard of reasonableness and that if his attorney had properly advised him, Petitioner would have insisted on going to trial. United States v. Silva, 430 F.3d 1096, 1099 (10th Cir. 2005).  The Tenth Circuit has concluded that pleas are involuntary where the attorney materially misrepresented the consequences of the plea.  Id at 1099.  An erroneous estimate of the sentence, by itself, does not render a plea involuntary.  Id. at 1099.

Petitioner argues that his plea was involuntary because his attorney improperly advised him to enter into the guilty plea.  Petitioner claims that his attorney advised him that he was facing thirty (30) years to life imprisonment for the charges in the Third Superseding Indictment should he choose to proceed to trial.  He further claims that counsel unequivocally stated that Petitioner would be sentenced to at least twenty (20) years but in no event would he be sentenced to more than thirty (30) years should he accept the plea deal (Doc. 1 at 7-8).  Petitioner contends that based on his attorney's prediction of the sentence, he accepted the plea rather than go to trial.  Id.  He also argues that his attorney advised him that criminal conduct not contained in the plea agreement would not be raised by the Government nor considered by the Court during sentencing.  Id.  He asserts that after his change of plea hearing on August 30, 2010, he tried to withdraw his plea but his attorney refused to file a motion.  Id.  Finally, Petitioner asserts that had he received competent advice of counsel he would have chosen to go to trial instead of take the plea (Doc. 1 at 8).

The Government argues that counsel's calculation of sentence combined with language contained in the plea agreement regarding the Court's discretion in sentencing precludes a

finding that there was ineffective assistance of counsel (Doc. 10 at 7-8).   The Government

introduces the affidavit of Petitioner's defense counsel, Mary Stillinger (Doc. 11-1).  Defense

counsel attests that she replaced a prior attorney in late November 2009.  Id. at 1.  She states that

she met with Petitioner the following month and thoroughly discussed the sentencing guidelines

and his options.  Id.  Thereafter, the Government informed defense counsel that a sentencing

enhancement would be filed raising the mandatory minimum sentence to twenty years but the

Government would offer a plea to seventeen years if Petitioner would enter into a plea

agreement.  Id.  Petitioner refused to take the plea and stated that he would consider a plea only

if he received a better offer.  Id.  In the interim, the Third Superseding Indictment was filed and

added a charge of attempted escape while Petitioner was in custody awaiting trial on his original

offenses (Doc. 11-1 at 2).  Defense counsel attests that she filed motions to sever the charges to

keep the evidence of the alleged attempted escape out of Petitioner's impending drug trial but

was unsuccessful (Doc. 11-1 at 2).  Then a codefendant in Petitioner's case was tried and

convicted, precipitating Petitioner's decision to enter into a plea deal (Doc. 11-1 at 3.)

Petitioner entered into the Plea Agreement on August 30, 2010 (Cr. Doc. 300).  The Plea

Agreement identified the minimum and maximum penalties for the offenses.  Moreover, the Plea

Agreement disclosed that the Court has discretion to determine the final sentence (Cr. Doc. 300

at 7).  On August 30, 2013, the District Judge conducted a plea hearing (Cr. Doc. 446).  At the

hearing, the District Judge elicited testimony from Petitioner to determine whether Petitioner was

entering into the Plea Agreement knowingly and voluntarily.  The Court specifically inquired of

Petitioner, "[h]as anyone forced you or threatened you in any way to get you to plead guilty this

morning?" (Cr. Doc. 446 at 9).  Petitioner unequivocally answered, "[n]o, sir."  Id. at 9.  The

Court also asked whether "anyone promised you anything in return for your plea other than the

terms of the plea agreement, itself" which Petitioner again stated "[n]o, sir." Id. at 9.  The Court

went on to question whether Petitioner was satisfied with his attorney's advice and if Petitioner

had any complaints about his attorney.  Id.  Petitioner testified that he was satisfied with the

advice he received and had no complaints about his attorney (Cr. Doc. 446 at 10).   After

questioning Petitioner about the plea and his understanding of the consequences of entering into

a guilty plea, the Court made a finding that Petitioner's plea was "knowing, voluntary, intelligent

and competent" and accepted the plea (Cr. Doc 446 at 12).

There is no question that Petitioner faced a long term of imprisonment regardless of

whether he went to trial or pled guilty.  Petitioner claims that he would not have entered into any

plea agreement that would not reduce his exposure to a lengthy sentence.  Now he states that

language in the Plea Agreement was confusing and different from what his defense counsel had

explained to him.  He contradicts the testimony at the Plea hearing where the District Judge gave

him every opportunity to complain about the agreement and his attorney's competence but,

Petitioner stood before the Court and testified that he knowingly and voluntarily entered into the

Plea Agreement.  He further testified that he was satisfied with his counsel's performance.

Finally, Petitioner testified that he understood that his sentence was determined by the Court

after review of the PSR.  Petitioner was never promised a specific sentence in return for entering

into the Plea Agreement.

The Court has reviewed the transcripts of the Plea and Sentencing hearings, and the

affidavit of defense counsel.  Nothing contained in the pleadings or other documents

demonstrates that defense counsel's performance fell below an objective standard of

reasonableness.  In addition, Petitioner fails to demonstrate that if his attorney had properly

advised him, he would have chosen to go to trial.  Therefore, the Court concludes that Petitioner did not receive ineffective assistance of counsel because his guilty plea was not involuntary.

Petitioner's Reply (Doc. 19) more fully develops his claim that not only did he receive ineffective assistance of counsel in deciding to plead guilty, but that when he changed his mind because of alleged disparities between statements by the Court at his Plea hearing and representations of his defense counsel, he requested counsel move to withdraw his plea. Petitioner cites Hamilton for the proposition that a motion to withdraw a plea should be freely allowed, but the Tenth Circuit has held that it will not reverse the district court's decision absent a showing that the trial court acted unjustly or unfairly.  Hamilton, 510 F.3d at 1214 (citing United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999)).

Fed. R. Crim. P. 32(e) provides that if a defendant moves to withdraw his guilty plea prior to sentencing, "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  The burden of demonstrating a "fair and just reason" rests with the defendant. United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999) (citing United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993)); see also, United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000).  In accordance with Fed. R. Crim.P. 11(d)(2)(B) and Tenth Circuit case law, Petitioner "bears the burden of establishing a fair and just reason" for requesting the withdrawal of his plea agreement. Hamilton, 510 F.3d at 1214.  The Court examines the seven factors considered in Hamilton to determine whether Petitioner has met his burden:  "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." Hamilton, 510 F.3d  at 1214 (citing Gordon, 4 F.3d at 1572.)

Petitioner has not asserted his innocence.  As discussed above, the Court concluded that Petitioner knowingly and voluntarily entered into his guilty plea.  Moreover, Petitioner received assistance of counsel in all aspects of his case.  Petitioner claims that he requested his attorney file a motion to withdraw.  Defense counsel's affidavit unequivocally states that she discussed filing the motion but after consultation with Petitioner, he "decided to proceed with sentencing" (Doc. 11-1 at 4).  The transcript of the sentencing hearing also confirms that he decided to proceed with sentencing (Cr. Doc. 447).  Petitioner had plenty of opportunities at sentencing to inform the Court that he changed his mind or that he was not satisfied with his attorney's advice, but he failed to raise any of these concerns with the Court.  Id.

Petitioner has not raised any of the remaining factors (prejudice to the government, timing of the motion, inconvenience to the court, and waste of judicial resources) as a basis to find that there is a fair and just reason that a motion to withdraw his guilty plea should have been granted by the trial court.   These factors address the potential burden on the Government and the Court.   The Tenth Circuit has held that a court does not need to address these factors unless the defendant presents a fair and just reason for withdrawal. United States v. Hickok, 907 F.2d 983, 986 (10th Cir. 1990).  Since Petitioner has not met his burden, the Court does not address these remaining factors.

For the reasons stated above, the Court recommends dismissal of Claim 1 of Petitioner's Motion that includes Petitioner's claim the he received ineffective assistance of counsel because his plea was involuntary and defense counsel's failed to a motion to withdraw his plea.

## II.
### Petitioner Was Not Prejudiced By The Delay In Sentencing

Petitioner also argues that he was prejudiced by the delay in sentencing asserting that eighteen months elapsed between the date of the plea hearing and the date that he was sentenced

(Doc. 19 at 14).  He claims that defense counsel's performance was deficient because she "made no effort to ensure that defendant was promptly sentence by the Court" (Doc. 19 at 14). Petitioner also blames the Government for the delay in sentencing.  Id.

"The Sixth Amendment guarantees all criminal defendants the right to a speedy trial" which the Tenth Circuit has applied from arrest through sentencing. Perez v. Sullivan, 793 F.2d 249, 253 (10th Cir. 1986).  The Tenth Circuit has applied the following four-factor test to determine whether a delay violates a defendant's right to a speedy trial: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  None of the factors are necessary or sufficient; rather, the factors are related and should be considered together with other relevant circumstances.  United States v. Gould, 672 F.3d 930, 936 (10th Cir. 2012) (citing United States v. Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006).  "The first factor, length of delay, functions as a triggering mechanism" that requires the remaining factors be examined if the length of delay is long enough to be presumptively prejudicial.  Yehling at 1243.  In Perez, the Court stated that a fifteen-month delay in sentencing was sufficient to require inquiry into the remaining factors. 793 F.2d at 257.   "Other courts have rejected speedy trial claims in cases in which the period from the entry of a plea, or from conviction, to sentencing was considerably longer than it was here." Id. at 256 (citing Pollard v. United States, 352 U.S. at 354, 77 S.Ct. at 481 (24 months); United States v. Tortorello, 391 F.2d at 587 (29 months)).

The Government points out that the delay between the entry of the guilty plea and sentencing was 501 days, which is approximately sixteen months.  While the Court does not consider the delay unreasonable, the Court considers the reason for the delay.  The Government asserts that the delay "does not represent a very long period."  The Government asks the Court to

take judicial notice that the District Judge assigned to Petitioner's case presided in a death penalty proceeding, a murder proceeding and faced medical issues while Petitioner awaited sentencing. Id. at 11. While Petitioner awaited sentencing, the Government discovered that Petitioner was allegedly involved in criminal activity despite being in custody (Doc. 10). After Petitioner's alleged criminal conduct was brought to light, defense counsel moved for a continuance of sentencing to consult with Petitioner regarding the alleged ongoing criminal activity (Doc. 10). Finally, the Government argues that Petitioner "has pointed to no prejudice" other than the evidence presented to the District Judge regarding the ongoing criminal activity. Id. at 11.

Petitioner asserts that "defense counsel made no effort to ensure that defendant was promptly sentenced" despite Petitioner's alleged anxiousness to begin his term of imprisonment (Doc. 19 at 14). Petitioner contends that his defense counsel's affidavit "admits that he was prejudiced by certain information offered by the Government at sentencing" (Doc. 19 at 16). He states that his attorney's belief that delay in sentencing usually "favors the defense . . . because it allows her to show a more substantial record of good behavior before sentencing . . .[is] twisted logic border[ing] on the insane." Id. Defense counsel's affidavit explains that she sought a continuance to give her an opportunity to consult with Petitioner to rebut the allegations of misconduct.

The Court considers that the delay was not caused by either the Government or defense counsel, with the exception of the one brief continuance to attempt to mitigate the damaging information proffered by the Government in seeking the maximum sentence. It appears that there was an unintentional delay because of the Court's busy docket and personal medical issues faced by the District Judge. The Court has reviewed the record and does not believe that the

11

delay prejudiced the Petitioner to the extent that he was denied any rights. Therefore, the Court

recommends that Claim II be dismissed.

### III.
### Counsel's Alleged Failure To Provide Petitioner With The Final Presentence Report Does Not Rise To The Level Of Ineffective Assistance Of Counsel

Petitioner's asserts that his counsel failed to provide him with the revised version of the

Presentence Report (Doc. 1 at 10).  The Government contends that Petitioner never informed the

Court that he did not receive the final PSR when the Court inquired of defense counsel whether

she had reviewed the PSR and she responded affirmatively (Cr. Doc. 447).

Pursuant to Fed. R. Crim. P. 32(e)(2), "the probation officer must give the presentence

report to the defendant, defendant's attorney, and an attorney for the government at least 35 days

before sentencing unless the defendant waives this minimum period."  A "violation of Rule 32

does not automatically require a defendant's sentence be vacated." United States v. Virgen-

Chavarin, 350 F.3d 1112, 1113 (10th Cir. 2003).  A defendant's sentence will only be vacated if

he suffered prejudice.  Id.  To establish prejudice, defendant must demonstrate that (1) "the PSR

contained factual inaccuracies," and (2) that "successful objection to the factual inaccuracies . . .

would result in a shorter sentence."  Id.

A Court is required prior to the imposition of sentence to "verify that the defendant and

the defendant's attorney have read and discussed the presentence report and any addendum to the

report." United States v. McElrath, 253 Fed.Appx. 866, 870 (11th Cir. 2007) (citing Rule

32(i)(1)(A)).  Where a defendant expresses to the sentencing court that he or she has had an

opportunity to review and discuss the PSR with his or her counsel, he or she forfeits or waives

their Rule 32 rights.  United States v. Jacques, 345 F.3d 960, 962 (7th Cir. 2003) (discussing the

differences between waiver, the intentional relinquishment of a known right; and forfeiture, the

12

failure to make a timely assertion of a right); See also <u>United States v. Jones</u>, 80 F.3d 436, 438

(10th Cir. 1996) (Tenth Circuit joins other circuit which have held that a defendant waives the

minimum period that Rule 32 imposes for delivery of the PSR to the defendant, by participating

in sentencing hearing without objection.).

Petitioner claims that he received a "draft copy of the initially prepared Presentence

Investigation Report" but never received the final report (Doc. 1).  Although defense counsel

attests in her affidavit that she "does not believe that she sent [Petitioner] a copy of the revised

report" she does say that she discussed the revisions with Petitioner (Doc. 11).  The Government

asks the Court "not [to] accept the assertion that Defendant was not given the final PSR to

review" and points to the transcript of the sentencing hearing (Doc. 10 at 11-12).   The transcript

of the sentencing hearing reflects that the Court inquired of defense counsel whether she

reviewed the PSR with Petitioner and she replied in the affirmative (Cr. Doc. 447).  Petitioner

did not contradict his attorney's representation nor did he inform the Court that he had not

received a copy of the final PSR.  <u>Id</u>.  Petitioner did not object that he did not receive the final

PSR until he filed the instant § 2255 Motion (Doc. 1).  Petitioner's attorney attests that she did

object to the initial PSR on February 22, 2011 and she sent a copy of the PSR with her objections

to Petitioner (Doc. 11-1).  Petitioner's attorney further attests that she sent Petitioner copies of

the Government and Probation Officers' responses to her objections (Doc. 11-1 at 3).  Despite

his representations to the Court at his sentencing hearing, Petitioner states that he does not know

what the revisions to the PSR were or how they would have affected the outcome of his

sentencing (Doc. 19 at 14).

The Court finds Petitioner's claims not credible because of the Petitioner's testimony at the plea and sentencing hearings.  The Court therefore recommends dismissal of Claim III of Petitioner's Motion.

## IV.
### Counsel's Failure to Appeal Does Not Constitute Ineffective Assistance of Counsel

Petitioner alleges that his attorney was ineffective for failing to appeal his sentence (Doc. 1 at 11).  Petitioner asserts that his attorney told him that she would file an appeal and habeas corpus petition.  Id.  The Government asserts that Petitioner explicitly waived his right to appeal in the Plea Agreement.

A knowing and voluntary waiver of the right to appeal or to collaterally attack a sentence is enforceable.  United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001) (citing United States v. Atterberry, 144 F.3d 1299, 1300 (10th Cir. 1198)).  Waivers are subject to certain public policy exceptions permitting an appeal which are not implicated here.[1]  The Court can determine if defendant was informed of the waiver by examining the language in the plea agreement itself and looking to the plea colloquy between the defendant and the court.  United States v. Sandoval, 477 F.3d 1204, 1207 (10th Cir. 2007).  Courts evaluate the enforceability of such waivers by applying a three part analysis, "(1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his right; and (3) whether enforcing the waiver would result in a miscarriage of justice."  United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).  Petitioner bears the burden of demonstrating that his waiver was not knowing

---

[1] United States v. Jefferson, 63 Fed.Appx. 439, 442 (10th Cir. 2003) (citing United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001) (The exceptions permitting appeal are "where (1) a district court has relied on an impermissible factor such as race, (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful.")

and voluntary.  Sandoval, 477 F.3d at 1207.  Petitioner also has the burden to demonstrate that

the waiver results in the miscarriage of justice.  Hahn, 359 F.3d at 1325.

Petitioner's Plea Agreement itself contains a section entitled WAIVER OF APPEAL

RIGHTS (underlined and capitalization in Agreement).  The waiver states:

> The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. §
> 3742 afford a defendant the right to appeal the conviction and the
> sentence imposed.  Acknowledging that, the defendant knowingly
> waives the right to appeal this conviction and/or any sentence
> within the statutory maximum penalty authorized by law.  In
> addition, the defendant agrees to waive any collateral attack to this
> conviction and/or sentence pursuant to 28 U.S.C. § 2255, except of
> the issue of ineffective assistance of counsel.

Agreement at 7.

The Plea Agreement further states that "[t]he defendant agrees and represents that this plea of

guilty is freely and voluntarily made and not the result of force or threats or of promises apart

from those set forth in this plea agreement." Id. at 8.   In the Plea Agreement, Petitioner

specifically waived his right to raise any collateral challenge in connection with his conviction or

sentence.  Now he alleges that he did not voluntarily enter into the plea.   He claims that at the

time he entered into the plea, he did not understand the consequences (Doc. 19 at 13).  Petitioner

does not set forth any credible facts to suggest that his waiver was made unknowingly or

involuntary.  He does not allege that he objected to the waiver provision or that he was coerced

into entering into the Plea Agreement.

Petitioner's testimony under oath at the plea hearing completely contradicts his assertion

that he was forced into entering into the plea.  Petitioner testified that he read and discussed the

Plea Agreement with his attorney before signing, that he signed the Agreement voluntarily, that

he understood the Agreement and that he agreed to be bound by the Agreement. (Cr. Doc. 446 at

3-4).  Petitioner further testified that he understood he was giving up his right to directly appeal

both his conviction and the sentence he would receive. Id. at 7.   Defendant repeatedly stated that he understood the provisions of the Plea Agreement including his rights, the charges and that he was giving up his rights in exchange for certain concessions.  (CR. Doc. 446 at 3-7).  Based on this colloquy, the District Judge made specific findings that "Mr. Munoz is knowing, voluntary, intelligent and competent."  Id. at 12.  The record supports a finding that Petitioner fails to demonstrate that his waiver was unknowing or involuntary.  Likewise, Petitioner fails to demonstrate how his waiver results in a miscarriage of justice.  Additionally, there is no evidence that the Court relied on any of the factors that would permit appeal. Jefferson, 63 Fed.Appx at 442.   Therefore, this Court recommends finding that based on the record, Petitioner's Plea Agreement contains an enforceable waiver.

Petitioner's claim that his counsel failed to file an appeal does not challenge the validity of the plea agreement or the waiver. Petitioner states that his attorney represented that she was going to file an appeal and a writ of habeas corpus. Id.  The affidavit from Petitioner's attorney attests that Petitioner "asked [her] if we could appeal, and I told him we could not, because he had waived that right as a part of the plea agreement." (Doc. 11-1 at 4).  Petitioner never states that he requested that counsel file an appeal on his behalf (Doc. 1 at 11).  Even if Petitioner had made the request to his counsel, an appeal challenging the sentence would be moot given the provisions of the Plea Agreement.

In United States v. Cockerham, the Court held that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or waiver."  237 F.3d at 1187. The Court further held that "[c]ollateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable." Id.   A waiver of appeal in a

plea agreement does not bar a claim that counsel was ineffective for refusing to file an appeal despite a defendant's instructions to appeal. United States v. Guerrero, 488 F.3d 1313, 1315 (10th Cir. 2007) (citing Roe v. Flores-Ortega, 528 U.S. 470 (2000); United States V. Snitz, 342 F.3d 1154 (10th Cir. 2003); United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005)).  However, a valid waiver of collateral challenges in the plea agreement waives the right to bring a § 2255 motion except for ineffective assistance claims which challenge the validity of the plea or the waiver. Cockerham, 237 F.3d at 1187.

A claim of ineffective assistance of counsel that does not relate to the plea negotiation or waiver itself will not survive a knowing and voluntary § 2255 waiver. See United States v. Macias, 229 Fed. Appx. 683, 687 (10th Cir.2007) (unpublished) (claim that counsel failed to consult defendant about appeal barred by waiver of collateral challenges in plea agreement); United States v. Davis, 218 Fed. Appx. 782, 784 (10th Cir.2007) (unpublished)   (claim that counsel failed to file appeal does not go to validity of plea or waiver and therefore barred by plea waiver).  Based on the foregoing, the Court finds that Petitioner's claim of ineffective assistance of counsel for failure to appeal does not relate to the plea negotiation or waiver and is therefore barred by the waiver of collateral attack contained in the Plea Agreement.  Therefore, the Court recommends dismissal of Claim IV.

## REQUEST FOR EVIDENTIARY HEARING

In his Reply, Petitioner requests an evidentiary hearing "on all claims for which a genuine issue of material fact exist" (Doc. 19 at 17).  The Government argues that an evidentiary hearing is not required because Petitioner's Motion fails on the merits (Doc. 10 at 12).  The "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  U.S. v.

Cervini, 379 F.3d 987, 994 (10th Cir. 2004).  "The purpose of an evidentiary hearing is to

resolve conflicting evidence."  Hooks v. Workman, 606 F.3d 715, 731 (10th Cir. 2010) (citing

Anderson v. Attorney General of Kansas, 425 F.3d 853, 860 (10th Cir. 2005)).  Petitioner has not

demonstrated that any conflicting evidence exists.  In light of the record and relevant authorities,

an evidentiary hearing is not required nor would a hearing materially assist the Court in

recommending a disposition.

<u>RECOMMENDED DISPOSITION</u>

The Court concludes that Petitioner is not entitled to any relief with respect to the claims

raised in his § 2255 motion.  Therefore, the Court recommends that Petitioner's Motion (Doc. 1)

be DENIED and that this civil proceeding be DISMISSED WITH PREJUDICE in its entirety.

Within fourteen (14) days after a party is served with a copy of these proposed findings

and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to

these proposed findings and recommended disposition.  A party must file any objections with the

clerk of the district court within the fourteen (14) day period allowed if that party would like to

have appellate review of the proposed findings and recommendations.  If objections are not filed,

appellate review will not be allowed.

_Robert Hayes Scott_

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE